**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**EDDIE SCOTT, JR.**                                                                                       **PLAINTIFF**

**V.**                              **CASE NO. 4:14-CV-00412 JLH/BD**

**TALLY, et al.**                                                                                           **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.     Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge J. Leon Holmes. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection.

Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II.    Discussion:**

   A.    Background

Plaintiff Eddie Scott, Jr., a former Pulaski County Regional Detention Facility ("PCRDF") inmate, filed this has filed this § 1983 case pro se. (Docket entry #2, #6) In his amended complaint, Mr. Scott stated deliberate-indifference claims against

Defendants Hooker, Hunter, Smith, Shepard, Morgan, and Allison, and retaliation claims against Defendants Smith, Shepard, and Morgan. (#2, #6)

Defendants have now moved for summary judgment. (#35) Mr. Scott has not responded to the motion, and the time for responding has passed. For the reasons set forth below, Defendants' motion for summary judgment (#35) should be GRANTED, and Mr. Scott's claims should be DISMISSED, without prejudice.

B. Standard

In a summary judgment, the court rules in favor of a party before trial. A moving party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

C. Facts

Mr. Scott alleges that he was raped by his cell-mate, Clifton Hall, on August 8, 2013. (#6) It is undisputed that Defendant Hooker walked by the cell while Mr. Scott and inmate Hall were engaged in intercourse. When they saw Defendant Hooker, the inmates separated. (#6, #36)

According to Mr. Scott, when Defendant Hooker opened the cell door, he asked Mr. Scott if he was alright. (#6) He alleges that he did not tell Defendant Hooker he had

been raped because he was afraid Defendant Hooker would leave him in the cell with Mr. Hall, and Mr. Hall had a blade within arms reach. (#6, #38)

On the day of the incident, Defendant Hooker reported to Sergeant Eckman that he had seen Mr. Scott and Mr. Hall engaged in "sexual activity." (#37, p. 19) Sergeant Eckman found Mr. Scott in the multipurpose room later that day and asked him whether he had been assaulted and whether Mr. Hall had engaged in any criminal behavior. Mr. Scott replied "no." He also "denied anything had occurred." (#37, p.19) At the time of Sergeant Eckman's August 8, 2013 report, the two inmates had been reassigned to different units. (#37, p.19)

Mr. Scott reports that, even though he and Mr. Hall were put in different units after the incident, he did not immediately tell anyone he was raped because he was afraid that Mr. Hall's friends would hurt him and that staff would not believe him. (#6, #37) According to Mr. Scott, he waited until that night when he was moved to another unit to tell a deputy what happened. (#6) According to Mr. Scott, he filed an emergency grievance the same day.[1] (#6)

Mr. Scott received notice on August 11, 2013, that he was being charged with sexual activity by coercion or consent. (#37) On that same day, he filed a grievance saying that he had been sexually assaulted by Mr. Hall and that he was experiencing pain in his lower stomach. He requested to see a doctor. (#38)

---

[1] Defendants do not include this grievance in their statement of facts. (#36) The first grievance PCRDF has is from August 11, 2013. (#38)

On August 13, 2013, Mr. Scott filed a sick-call request, asking to speak with a mental health professional. He reported that it was an emergency. (#39) On August 15, 2013, Mr. Scott filed a grievance stating that he had not received any medical or mental health treatment following the August 8, 2013 incident. (#38) On August 17, 2013, Mr. Scott again filed a sick call request, asking to see a mental health professional regarding the August 8, 2013 incident. (#39) On August 21 and 29, 2013, Mr. Scott filed grievances again requesting to speak with a mental health professional and stating he had turned in sick-call forms. (#38)

Meanwhile, on August 12, 2013, Defendant Allison began an investigation into Mr Scott's rape allegations. (#37) Defendant Allison interviewed Defendant Hooker, Mr. Hall, and Mr. Scott. (#37) According to Defendant Hooker, it appeared that Mr. Scott and Mr. Hall were having consensual sex on August 8, 2013. (#37) It is undisputed that Mr. Scott did not report the incident as a sexual assault until several days later. (#37) According to Mr. Hall, Mr. Scott made sexual advances and performed oral sex on Mr. Hall before they engaged in consensual intercourse. (#37) According to Mr. Scott, Mr. Hall grabbed him around his left shoulder so that Mr. Scott could not move, pulled Mr. Scott's pants down and penetrated Mr. Scott. (#37)

On August 19, 2013, Defendant Allison concluded that, based on the witness statements and lack of physical evidence supporting Mr. Scott's allegations, the rape case should be closed as unfounded. (#37) On August 22, 2013, Mr. Scott was informed that

he was found guilty of having consensual sex with Mr. Hall and that was sentenced to twelve days in punitive segregation. (#37)

On September 2, 2013, Mr. Scott saw a physician. (#38) On September 14, 2014, Mr. Scott filed a grievance complaining that he was being punished for filing grievances regarding the August 8, 2013 incident. (#38) On September 26, 2013, Mr. Scott was seen in the mental health clinic by Dr. Strode. (#39) Dr. Strode noted that Mr. Scott was experiencing stress regarding an assault and prescribed him an antidepressant. (#39) On December 19, 2013, Mr. Scott again saw Dr. Strode and reported that the medication was ineffective. (#39) Dr. Strode found no signs of distress and took him off the medication to see if there was any effect. (#39) On March 13, 2014, Mr. Scott saw Dr. Strode and reported that he was not feeling any stress. (#39)

D.     Deliberate Indifference

Determining whether an official was deliberately indifferent to an inmate's medical needs involves both objective and subjective analyses. *Scott v. Benson*, 742 F.3d 335, 339–40 (8th Cir. 2014). To prevail, Mr. Scott first must establish that he suffered from an objectively serious medical need. *Id*. at 340. Because Defendants do not argue that Mr. Scott suffered from a serious medical need, the Court will turn to the subjective component of the deliberate-indifference standard.

For Defendants to be liable, Mr. Scott must show that the Defendants "actually knew of but deliberately disregarded [his] serious medical need." *Id*. This showing requires a mental state "akin to criminal recklessness." *Id*. (quoting *Gordon v. Frank*, 454

F.3d 858, 862 (8th Cir. 2006)). Mr. Scott must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). He must show that the Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997).

The Constitution does not require jail officials to handle every medical complaint as quickly as the inmate might wish. *Jenkins v. Country of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). To sustain a delay of medical care claim, Mr. Scott must present verifying medical evidence to show the objective seriousness of the delay. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005).

Mr. Scott asserts in his complaint that, as a result of Defendant's deliberate indifference, he suffers from post traumatic stress disorder; however, he has offered no evidence that the relatively brief delay in receiving mental health treatment had a detrimental effect. Mr. Scott saw a medical doctor twenty-four days after the August 8, 2013 incident and a mental health professional forty-nine days after the incident. Any delay in receiving treatment amounts to gross negligence, at worst. Based on the undisputed evidence, Defendants did not act with deliberate indifference to Mr. Scott's medical or mental health needs.

E.   Retaliation

To prevail on a retaliation claim, a prisoner must show that retaliation was the "actual motivating factor" for adverse treatment and that the adverse action would not have occurred "but for a retaliatory motive." *Lewis,* 486 F.3d at 1029; *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009).  The prisoner cannot prevail if the adverse action was taken for both a legitimate reason and out of an improper retaliatory motive. *Id.; Webb v. Hedrick*, Case No. 09-2896, 2010 WL 4366438, *1 (8th Cir. Nov. 5, 2010) (unpublished opinion) (explaining that a prisoner cannot prevail "if retaliation was one factor" in the defendants' decision); *Ponchik v. Bogan*, 929 F.3d 419, 420 (8th Cir. 1991) (rejecting a retaliation claim even when retaliation was only one of the factors leading to the inmate's transfer).  A finding that a disciplinary is based on some evidence of a violation "essentially checkmates" a retaliation claim. *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) cert. denied, 515 U.S. 1145, 115 S.Ct. 2584 (1995).

Here, Mr. Scott alleges he was retaliated against because the disciplinary was written after he filed his grievance. (#6)  Both the disciplinary charge and Mr. Scott's first grievance are dated August 11, 2013.  It is unclear from the record which occurred first.  Nonetheless, after the investigation into Mr. Scott's rape allegation was concluded, he was found guilty of having consensual sex with Mr. Hall.  This finding was supported by witness statements, including Mr. Scott's initial statements.  Because there is evidence to support the finding that Mr. Scott was guilty of the charge conduct, his retaliation claim fails.

## III. <u>Conclusion:</u>

The Court recommends that Defendants' motion for summary judgment (#35) be GRANTED on Mr. Scott's federal claims and that his federal claims be dismissed with prejudice. Further, the Court should decline to exercise supplemental jurisdiction over Mr. Scott's negligence and outrage claims and recommends that the state tort claims be DISMISSED, without prejudice.

DATED this 25th day of January, 2016.

_____
UNITED STATES MAGISTRATE JUDGE